## Lenhart's Estate.

*Will—Testamentary capacity—Issue devisavit vel non—Undue influence.*

An issue devisavit vel non for lack of testamentary capacity and for alleged undue influence by a son, will be refused, where the evidence shows that during the last year of decedent's life, decedent was much weakened by age and disease; that at times he failed to recognize neighbors and members of his family, but that on the day that the will was written he was able to transact business, understood and talked about the property he possessed, the parties to whom he desired to will it, and the disposition he wished to make of it; that the scrivener came at the decedent's request, and wrote the will under decedent's directions, without any member of the family being present; that the will after it was drawn was read to decedent, signed by him and a former will destroyed; that by the last will decedent's youngest son was devised land which by a former will had been devised to another son to whom a money legacy was given instead; that the other bequests in the first will were not changed; that the youngest son continued to live with his father until the latter's death, and was the only son who showed any taste or inclination towards farming; and that there was nothing to show that the change in decedent's intentions was brought about by the youngest son or by any one in his behalf.

Argued May 13, 1901. Appeal, No. 193, Jan. T., 1900, by William C. Hatfield, from decree of O. C. Fayette Co., March Term, 1898, No. 62, refusing issue devisavit vel non in estate of Leonard Lenhart, deceased. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from register of wills.

REPPERT, P. J., filed the following opinion:

This matter comes before the court on an appeal from the decision of the register of wills admitting to probate the will of Leonard Lenhart, deceased.

The petition upon which the appeal is based alleges lack of testamentary capacity on the part of the testator and undue influence exercised upon the testator by his son Leonard A. Lenhart, and others not named.

At the time of his death in August, 1896, Leonard Lenhart was about eighty-six years of age. He had been twice married. His second wife died in March, 1895. He left surviving four

children by his first wife, as follows: Michael Lenhart, Mrs. Martha L. Clarke, James S. Lenhart, George W. Lenhart. Also four grandchildren, the children of Mrs. Mary F. Hatfield, deceased, a daughter by the first wife, as follows: William C. Hatfield, Leonard L. Hatfield, George L. Hatfield, Lizzie B. Hatfield. Also three grandchildren, the children of Mrs. Laura J. Guiler, deceased, a daughter of the first wife, as follows: Carrie Guiler, Leonard K. Guiler, Mary Guiler. Also three children by the second wife, as follows: Mrs. Elizabeth McCormick, Charles E. Lenhart, Leonard A. Lenhart.

The will in dispute was admitted to probate September 28, 1896, the register of wills having previously refused after hearing, to issue a precept to the common pleas.

The estate of the decedent consisted mainly of a tract of land situate in Redstone township, this county, containing 283 acres and underlaid with coal. He devised the surface of the land to his son Leonard A. Lenhart, and directed his executors to make sale of the coal whenever it could be done to the best advantage.

The proceeds of the coal he bequeathed as follows:

| | |
|---|---|
| To Mrs. Elizabeth McCormick, | $6,000.00 |
| To Michael Lenhart, | 1,000.00 |
| To Mrs. Martha L. Clarke, | 3,500.00 |
| To James S. Lenhart, | 1,500.00 |
| To George W. Lenhart, | 2,000.00 |
| To J. V. Thompson in trust for Chas. E. Lenhart, | 9,000.00 |
| To Leonard A. Lenhart, | 6,000.00 |
| To William C. Hatfield, | 300.00 |
| To Leonard L. Hatfield, | 300.00 |
| To George L. Hatfield, | 300.00 |
| To Lizzie B. Hatfield, | 300.00 |
| To Carrie Guiler, | 300.00 |
| To Leonard K. Guiler, | 300.00 |
| To Mary Guiler, | 300.00 |
| | $31,100.00 |

In addition to the above he bequeathed to Mrs. McCormick some items of personal property; to James S. Lenhart two notes he held against him, the amounts not being named; to Leonard A. Lenhart his household effects and live stock and ten

shares of railroad stock, and he devised to him his lands above referred to, excepting the nine-foot vein of coal; to Leonard L. Hatfield, thirteen shares of Brownsville Gas Company stock; to Leonard K. Guiler his interest in a lot at the west end of the Monongahela bridge and $100 in money.

In case the proceeds of the coal and personal property not disposed of by will should exceed the bequests made, then the excess is to be divided among the legatees in proportion to the bequests made to them, and should there be a deficiency then the bequests are to be reduced in like manner.

The petition further alleges that the coal underlying the land is inadequate to produce the legacies bequeathed out of the proceeds thereof, and that the testator was fraudulently induced to place a fictitious value on the coal by Leonard A. Lenhart for the purpose of obtaining the advantage to be derived from the devise of the surface.

For some eighteen years before his death the testator suffered from inflammation of the bladder, at first acute, afterwards chronic. Beginning in 1877, Dr. C. C. Reichard, of Brownsville, was his attending physician until his death, visiting him at irregular intervals when suffering from attacks of the disease to which he was subject; Dr. Reichard attended him in the spring of 1895, and again in July or August of the same year some four or five times. His next call was in January of 1896, and in July and August of 1896, in decedent's last illness, he visited him some five or six times. These visits seem to have been paid when Mr. Lenhart was in much pain, and the conversation was principally in reference to his illness. Dr. Reichard testifies that the deceased gradually became worse during the last two years of his life, losing flesh, becoming melancholy and taciturn, and taking no interest in matters that formerly interested him, both mind and body being much weakened by age and disease; that in 1895 he was not competent to transact important business or to make a will. He admits that in his examination before the register of wills in 1896, he stated in reply to the question whether the decedent was capable of making a will, that he didn't know, and his conclusion in his present testimony seems to be based on the extreme age, long continued suffering and changed characteristics above

noted. He never discussed business matters with his patients or heard his patient discuss them with others.

In the testimony of other witnesses instances of childish and improper conduct, loss of memory and failure to recognize neighbors and members of his family appear. These instances, however, occur generally during or just after attacks of the disease with which he was afflicted. These attacks were accompanied by great physical suffering, and mental and physical prostration. For some four or five years before his death he had given up the active management of his business, farming, his affairs being looked after by his youngest son Leonard A. Lenhart, who had never married, and who had remained at home, and was, for some years prior to his father's death the only child remaining at home.

The will is dated October 10, 1895. It was written at the residence of the deceased on that date by J. V. Thompson of this place, a man of great business experience, and who has frequently been called upon to perform similar services. He went there at the decedent's request, for that purpose, and while there he had no intercourse with any other member of the family. He was accompanied by his wife, since deceased. He had known Mr. Lenhart for many years. A former will, written some ten years before, by Mr. Thompson's father, had been left at the bank, of which he is an officer, for safekeeping, and was in his possession. The testator's second wife had died the preceding March, and this, with a different disposition of a portion of the surface of the farm, was assigned as the reason of rewriting the will. The former will was read twice, and the changes desired noted, the present will was then drafted, read to Mr. Lenhart, and signed by him, and the former will destroyed at his request. Mr. Thompson testifies that no suggestions were made to Mr. Lenhart, no member of the family was present or consulted; that he detected no change in his ability to transact business; that in view of his sickness he thought him remarkably strong; that he understood and talked about the property he possessed, the parties to whom he desired to will it, and the disposition he wished to make of it. The will, so far as the present beneficiaries are concerned, was practically a republication of the former will with the exception that sixty or seventy acres of surface were devised to Leonard

A. Lenhart in addition to what had previously been devised to him. By the former will this land had been devised to Charles Lenhart. In its place he was bequeathed $3,000 of the proceeds of the coal in addition to the sum bequeated him by the former will. The bequests made to the other legatees, and payable out of the proceeds of the coal were unchanged. At the time the former will was made it is not alleged that the testator was not in full control of his business, and of his mental faculties ; nor is it alleged that at that time he was subject to undue influence. Leonard A. Lenhart was then about nineteen years of age. He remained with his father until the latter's death, and so far as the evidence shows, was the only one of his sons who showed any taste or inclination towards farming. There is no proof that the testator's intention to change his will was brought about by Leonard A. Lenhart or by anyone in his behalf, nor is there any proof that the changes actually made were made other than by the testator's own wish and motion. And the fact that the sums bequeathed to the other legatees in the former will were undiminished in the will in contest certainly shows that no deception, artifice or undue influence was used to their prejudice in the mean time. It is not claimed that undue influence was exerted in behalf of Charles Lenhart, and yet it is evident that the increased legacy given to him by the will in contest almost, if not fully, equals the increased devise to Leonard. Nor is there foundation for the charge that a fictitious valuation was placed upon the coal to the advantage of the devisee of the surface. The judgment of the testator as to the value of his coal has been more than justified, and it is a well known fact which we feel that we can here state without impropriety, although it does not appear in evidence, that the proceeds of the testator's coal would at this time pay nearly, if not fully, double the legacies named in the will. Nor is it difficult, with the knowledge that comes after the fact, to see the ground upon which the testator's judgment was based. We are fully satisfied that at the time this will was made the testator possessed testamentary capacity, and that he exercised it without undue influence.

The family relations disclosed in the testimony are not unusual either in their characteristics or in their results, and as is so well stated by Judge HANNA in Jacob Loeser's Estate, 167

1901.]            Opinion of Court below—Opinion of the Court.

Pa. 498, it is but natural that some of the legatees under this will " feel disappointed with the disposition made by the testator of his estate," and are convinced that it is most inequitable. But they fail to recognize his right to do as he deemed best with his own property, to prefer one child above another, or disinherit one or more at his discretion. This dominion and power conferred by statute and protected by the law is not to be interfered with for slight cause. And it is not for the courts to produce an equality where a testator has seen fit to make an inequality, merely to relieve the disappointment and chagrin of legatees whose equal or superior claims, in their opinion, have been unjustly disregarded."

After a careful examination of the testimony we do not think it is sufficient to sustain a verdict against the will, and an issue is therefore refused and the appeal dismissed.

*Error assigned* was the decree of the court.

*Nathaniel Ewing*, with him *A. D. Boyd* and *A. C. Hagan*, for appellants.

*A. Plumer Austin*, with him *R. H. Lindsey*, for appellees.

PER CURIAM, May 27, 1901:

The decree is affirmed on the opinion of the learned court below.